(Rev. 10/2002) General Document

# UNITED STATES DISTRICT COURT

## Southern District of Florida

Case Number: _____

Christine Scott
_____
_____
Plaintiff(s)

v.

State of Florida
_____
_____
_____
Defendant(s)

FILED BY _____ D.C.

MAR 10 2022

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. LAUD.

# Emergency Motion for Declaratory and Injunctive Relief

*(TITLE OF DOCUMENT)*

I, Christine Scott (plaintiff) or defendant, in the above styled cause, (herein known as 'Scott') hereby move this court for declaratory and injunctive relief enjoining the State of Florida from arresting and prosecuting Scott at any time in the future for petitioning to gain ballot access, which is a constitutionally protected federal right on private property that is open to the public/quasi-public land.

Scott is an indigent candidate seeking to gain ballot access by petition for the Federal seat of United States House of Representatives, in Florida's 22nd District during the 2022 Election cycle. Due to the fact that 2022 is a redistricting year, it is possible Scott's district will

pg 1 of 58

change depending on whether
or not the district lines are
altered in such a manner as
to situate Scott within the
boundaries of another district.
   Lubin v. Panish, a case
decided by the U.S. Supreme
Court in 1974, held that,
absent alternative means of
ballot access, states cannot
require indigent candidates
to pay filing fees they cannot
afford. To do so violates the
Equal Protection Clause of
the Fourteenth Amendment,
as well as the rights of
expression and association
guaranteed by the First and
Fourteeth Amendments of
the U.S. Constitution.

' ballotpedia.org/Lubin_v._Panish

In accordance with the U.S. Supreme Court's ruling in Pruneyard Shopping Center v. Robins, 447 U.S. 74, 100 S. Ct. 2035, 64 L. Ed. 2d 741 (1980) '(t)he U.S. Supreme Court held...its... decision did not ex propio limit the authority of a state to exercise its police power or its sovereign right to adopt in its own constitutional individual liberties more expansive than those conferred by the federal constitution. The Supreme Court held that the requirement that appellants permit appellees to exercise state-protected rights of free expression did not infringe appellants' property under the taking clause,

pg. 3 of 58

because nothing suggested
that the exercise of those
rights would unreasonably
impair the value or use of
appellants' property.'
    Justice Marshall concurred
that the 'decision in the case
at bar presented part of a
healthy trend of affording
State constitutional provisions
a more expansive interpretation
than was being given to the
Federal Constitution, and that
the... decision was not
violative of due process, even
though it placed a limitation
on the common law of trespass.'
    Justice White concurred,
agreeing 'that on the record
in the case at bar there
had been no unconstitutional
infringement of the shopping
center owner's rights...'

As in Scott's case where she was twice arrested for petitioning to gain ballot access — first, on Oct. 10, 2021, at the South Florida Fairgrounds, in Palm Beach County, for which she was released on her own recognizance that same afternoon; and again on Nov. 9, 2021, at Clewiston's Walmart, in Hendry County, for which she was falsely arrested and illegally imprisoned for 66 days and finally released on her own recognizance without being sentenced or a judgement made against her with the jury trial still pending, in which her right to a speedy trial has not been waived — the U.S. Supreme Court

in 'PruneYard' states that 'the shopping center by choice of its owner is not limited to the personal use of appellants. It is instead a business establish-ment that is open to the public to come and go as they please. The views expressed by members of the public in passing out pamphlets or seeking signatures for a petition thus will not likely be identified with those of the owner."

Unlike 'PruneYard', Walmart and Publix do not have 'a policy not to permit any visitor or tenant to engage in any publicly expressive activity, including the circulation of petitions, that is not directly related to its commercial purposes' as

pg. 6 of 58

delivered by Justice Rehnquist in his opinion.

As was argued by the lower court in "PruneYard", "It bears repeated emphasis that we do not have under consideration the property or privacy rights of an individual homeowner or the proprietor of a modest retail establish-ment."[2] As was the case with "PruneYard", Walmart, Publix, other big box stores or the South Florida Fair-grounds are not individual homes or modest retail establishments.

[2] See Diamond v. Bland, 3 Cal. 3d 653, 665, 477 P. 2d 733, 741 (1970)

The Younger Principles is not an absolute policy and does not apply in this case. When a genuine threat of prosecution exists, a litigant is entitled to resort to a federal forum to seek redress[3] for an alleged deprivation of federal rights. Scott has a federally protected constitutional right to ballot access, which is protected by her right to petition.

Walmart, Home Depot, Lowes and the majority of big box shopping establishments are traded on the open market (ie. New York Stock Exchange). Such stocks are subject to

[3] under 42. U.S.C.S. §1983

pg. 8 of 58

federal oversight and rules
by the Security Exchange
Commission, a branch of
the federal goverment. The
stocks are sold interstate and
globally, not just within the
State of Florida, which
allows this court jurisdiction
over the properties owned by
a big box store rather than
only when the land on which
the big box store is situated
at a location owned by an
individual property owner
who has allowed his/her
property to be open to the
public. In such, this
court may address all
large retailers that are
open to the public.
   When a property or
corporate owner is a
publicly traded company
(ie. Walmart) or a

pg. 9 of 58

employee owned company with foreign ownership (ie. Publix) that is attempting to block the constitutionally protected right to petition to gain ballot access, which is a federally protected constitution right, and when that property owner has foreign investors, which one can safely assume all publicly-traded big box retail stores have, then there becomes an issue of foreign interference in U.S. elections when that partially foreign-owned entity that is open to the public refuses to allow American citizens to petition for ballot access at that property owned by a publicly-owned property located on U.S. soil.

pg. 10 of 58

Declaratory and injunctive relief are necessary in order to afford adequate protection of constitutional rights to petition and gain ballot access, particularly relating to indigent candidates.

On Oct 10, 2021, Scott was falsely arrested for petitioning for ballot access, at a Gun Show, in West Palm Beach's South Florida Fairgrounds, a privately-owned corporation which held the Gun Show open to the public.

On Nov. 9, 2021, Scott was falsely arrested at a Walmart, in Clewiston, FL for legally petitioning for ballot access. She was illegally imprisoned for trespass based on the

pg. 11 of 58

fact that she was gather-
ing petition signatures to
gain ballot access. Scott
was held in jail for 66
days, much of which was
in solitary confinement,
until Feb. 16, 2022 when
she was finally released
on her own recognizance.
    During the 2020 election
cycle, Scott also ran for
the office of United States
House of Representatives,
in Florida's District 22.
Several dozen Palm Beach
County Sheriff deputies,
Broward County Sheriff
deputies and local police
officers in various cities
within the 22nd district
stopped and blocked Scott
from petitioning, often
citing her with a trespass

pg. 12 of 58

warning or threat of arrest.
This happened 27 times on
25 different days throughout
District 22. In and of itself,
it caused enough harm to
Scott's ability to petition
to keep her off the ballot,
which deprived her of 1) her
right to petition, pursuant the
Federal constitution as well
as Florida's consitution,
Article 1, Section 5; and 2) her
federally protected constitution-
al right to ballot access.
Scott was cited with a
trespass warning by law
enforcement at several
publicly-traded quasi-public
places that were open to
the public, such as Walmart,
Whole Foods, Home Depot,
and Lowes. Some of the
locations were on privately-
owned property within a

shopping mall or complex, while others were on property owned outright by the publicly-traded corporation - such as Walmart, Lowes and Home Depot. While Publix had Scott removed from numerous locations for trespass based on the fact that she was gathering petition signatures for ballot access, it is not a publicly-traded stock. Rather, it is an employee-owned stock that crosses state lines and has foreign-ownership of the company stock.

In accordance with the United States Supreme Court's ruling in 'PruneYard' based on Florida's more expansive state const-itutional provisions, specifically in Article 1 - Declaration of Rights, Sections 4 and 5, and

pg. 14 of 58

Kevin E. Wood v. State of
Florida (2003 WL 1955433
(Fla. Cir. Ct.)), which specifically
states and was held by
Circuit Court Judge Costello
that 'State Constitution prohibits
a private owner of a "quasi-
public" place from using
state trespass laws to
exclude peaceful political
activity' based on:

    West Headnotes
[1] Constitutional Law 92 Key 1460
  92 Constitutional Law
    92XVII Political Right and Discrimination
      92k1460 k. In General Most Cited Cases
386 Trespass
    386III Criminal Responsibility
      386k84 k. Defenses. Most Cited Cases

State Constitution prohibits a
private owner of a "quasi-public" place
from using state trespass laws to
exclude peaceful political activity.
West's F.S.A. Const. Art. 1, §5.

      pg. 15 of 58

Florida has a long standing public policy of allowing candidates to petition to gain ballot access on private property that is held open to the public, as well as "quasi-public" places.

Scott had both a State and Federal right to petition for ballot access at Walmart, a publicly-traded corporation that is held open to the public / a "quasi-public" place; as well as at the South Florida Fair & Palm Beach County Expositions, Inc., which is not private property but has been incorporated meaning that the business has formed a corporation and is there-fore a legal entity separate from its owners,[4] since

---

[4] info.legalzoom.com

the U.S. Supreme Court's ruling in 'PruneYard' placed a limitation of trespass, related to petitioning and distributing political handbills, at such locations.

Scott had a right to petition at Walmart and the South Florida Fairgrounds because the locations are "quasi-public" places that have been opened to the public, in accordance to "Wood", 'PruneYard' and Florida's Constitution, Art. 1, Sec. 5, which states, "The people shall have the right peaceably to assemble, to instruct their representatives, and to petition for redress of grievances." The latter of which represents Florida's expansive constitutional

pg. 17 of 58

provision protecting a
Floridian's right to petition.
   The U.S. Supreme Court's
ruling in 'PruneYard' allows
petitioning on private property
that is open to the public,
based on the state's
expansive constitution that
protects free speech and the
right to petition. In Florida,
free speech is protected under
Section 4 of Article 1 -
Declaration of Rights, which
specifically states, "No law
shall be passed to restrain
or abridge the liberty of
speech..." In the same vein,
Florida's Constitution - like
that of the California
Constitution exampled in
'PruneYard' - is also more ex-
pansive than the U.S.
Constitution in terms of

protecting free speech, right to
assemble and right to petition.
    It is important to note
that PruneYard Shopping Center
did not allow any soliciting
or petitioning of any kind on
its premises, which is the
reason the case came before
the court, since the question
arose as to whether prohibiting
trespass of the right to petition
constituted a 'taking' of the
property, which the U.S.
Supreme Court did not find.
Further, if a quasi-public
place/private property open
to the public had permitted
selective petition gathering
and/or soliciting, then it
would not have been a
'taking' of property because
precedent would have been
set since the activity was

pg. 19 of 58

already occuring.
   'Wood' is nearly identical to
Scott's case. In 'Wood', a
candidate was arrested for
trespass at a quasi-public
place, just as in this instant
case. The 2003 circuit
court found that Wood had
not trespassed and, in such,
reversed and remanded the
case citing Florida's long-
standing public policy of
allowing petitioning on quasi-
public land.

   <u>Argument</u>
   The defense would likely
cite Publix Super Markets,
Inc., a Florida corporation
vs. Tallahasseans for Practical
Law Enforcement (herein
known as 'Publix'), Leon
County Circuit Court 2003,

   pg. 20 of 58

in arguing against the right
to gather petition signatures
and distribute campaign-related
literature on quasi-public
property and/or private property
open to the public.

The claim by the 'Publix'
text that the court researched
the issue regarding a private
citizen's right to petition on
private property is highly
misleading and should not be
taken at face value. 'PruneYard'
and 'Wood' prepresent the
prevailing case law relating to
a candidate's right to petition
and free speech for a multi-
tude of reasons, several of
which are addressed below.

There has been a very
misguided and strenuous
attempt by Florida's
Secretary of State, Laurel

pg. 21 of 58

Lee; a Department of State attorney who oversees matters relating to Candidates, Ashley Davis; and the Division of Elections' Director of Elections, Maria Matthews, to bury 'PruneYard' and 'Wood' and to ignore sections 4 and 5 of Florida's Article 1 of the Constitution, the first two were prominently displayed, in their entirety, when Scott initially informed the Division of Elections that she would be running for the federal seat of U.S. House of Representatives, but was removed from the 2020 Candidate Handbook.

 According to Davis, the Secretary of State and the Division of Elections were taking the position that

candidates could not petition on quasi-public land and/or private property open to the public, and instead needed to pay to gain ballot access, which directly contradicts established federal and state laws, the Florida Constitution, several years of placing both 'PruneYard' and 'Wood' in the DOE's online candidate handbook, and against a candidate's right to petition to gain ballot access, which is necessary to ensure all eligible candidates have ballot access. The Fourteenth Amendment protects a candidate's right to ballot access when the only option is to pay, as ruled in Panish v. Lubin, 415 US 709 (1974) deciding that absent alternative means of

pg. 23 of 58

ballot access, states cannot require indigent candidates to pay filing fees they cannot afford.

The Secretary of State and the Division of Elections, from all appearances, actions and words, decided to go rogue by ignoring, overlooking and brushing aside poinient, spot-on and relevant case law, which clearly and definitively protects a candidate's right to run for office, in the State of Florida, by the process of gathering enough petitions to gain ballot access — effectively spearhead-ing an elitist, pro-corporate, anti-constitutional charge to limit ballot access, which is protected under the U.S. Const-

itution. Each public employee, officer and elected official takes and oath to uphold the U.S. and Florida Constitutions. In such the actions by any public employee, officer or elected official that is counter to a citizen's constitutional rights is a violation of law, such as attempts to prevent indigent candidates from gaining ballot access by petition.

Scott's first Regional Conflict Counsel, in the related Hendry County case #21-897-MM, erroneously informed Scott that 'Publix' appeared to be 'the state of law in Florida', which means he was either unable or unwilling to find 'PruneYard' and/or 'Wood',

pg. 25 of 58

demonstrating the difficult task
of finding these cases through
online sources and/or the pervasive
messaging by Lee, Davis and
Matthews to pertinent government
employees, such as local law enforce-
ment and Supervisors of Elections,
throughout the State of Florida.
When one balances this informat-
ion with the fact that Secretary
Lee, in her official capacity,
accepted $200K 'Zuckerbucks'
(see 'Florida House Public Integrity
and Election Committee video,
dated Feb. 9, 2021, found on
the Florida House's website for
the Public Integrity and Elections
Committee) from the Center
for Tech and Civic Life (CTCL),
then went on to encourage the
CTCL to contact individual

pg. 26 of 58

Supervisors of Elections (SOE), which resulted in 11 Florida SOEs (including Broward, Palm Beach County, Miami-Dade, Leon, Lake, Hillsborough, Osceola, Wakulla, Hernando and others) accepting over $17M 'Zuckerbucks', one begins to see a very startling pattern of what appears to be systematic public corruption stemming from the Secretary of State.

In regard to candidate petitioning on quasi-public land, 'Wood' appears to be 'the state of the law in Florida'. 'Wood' specifically relates to a candidate being arrested for trespass at a quasi-public location, which means a privately-owned or publicly traded property that is open to the public. Further, 'Wood'

pg. 27 of 58

US Courthouse-

indicates that Florida has a longstanding
public policy of allowing petitioning on
quasi-public property. The trespass
charge was reversed. Wood was
found to have a right to petition on
quasi-public land. 'Wood', albeit difficult
to find generally, is located within
Westlaw and was also filed under a
Notice of Filing in Scott's 2021
Palm Beach County criminal case
stemming from the same act of
petitioning. The 'Publix' case addresses
an initiative, not a candidate. It
also addresses the several petitioners
who were hired or volunteering in an
attempt to get the initiative on the
ballot. As in 'Wood', Scott is a candidate,
not an initiative. 'Wood' is almost an
exact match to Scott's case.

   'Publix' was not well-researched. It
continually contradicts itself, errs in its
facts and fails to make obvious logical,
rational, sensible and realistic conclusions.
For example, the court in 'Publix' states
that Publix also occassionally allows
certain organizations to use a designated

space in front of stores for civic or education purposes. The court then states that "Publix...has the right to exclude persons in a non-discriminatory manner where such persons seek to use the property for purposes other than shopping." The two statements above contradict each other. You cannot allow some while excluding others while claiming to be non-discriminatory. One can only be non-discriminatory if one does not exclude. In the Leon County Circuit Court case, Publix willfully excluded those with a constitutional right to free speech, right to assemble and right to petition, while allowing non-constitutionally protected groups Publix wanted on the property, such as the Girl Scouts, T-ball fundraising and the Salvation Army; none of which have a constitutionally-protected right to petition. Rather, Publix was exercising the priviledge of soliciting funds and/or selling product, which Publix had decided to grant them.

It would appear that Publix is

U. S. Courthouse-

Specifically opposed to the protection of the rights guaranteed to each Floridian-free speech, the right to assemble and the right to petition. The Leon County Circuit Court address this directly, 'Publix contends that its right to exclude such individuals extends to activities that are characterized as political speech, including soliciting customers and other persons to sign petitions seeking some form of governmental action, as here, seeking signatures for what Defendants claim was a 'ballot initiative'."

The right to petition to gain ballot access is a protected right under the U.S. Constitution and Florida's more expansive state constitutional provisions, where as civil and educational soliciting is a choice, not a constitutionally protected right. Therefore, Publix, a publicly-traded company, is specifically advocating to discriminate against the constitutional rights of Florida citizens while picking and choosing which groups it wants to allow on its premises to

US Courthouse -

solicit, which is the very definition of discrimination.

The Leon County Circuit Court erroneously referenced Publix's non-discriminatory manner on no less than three instances, in her judgement. The assertion on such a basis is contrary to the very definition of non-discriminatory.

Further, one could argue that the real reason Publix seeks to discriminate against 'political speech' is an attempt to control which candidates and initiatives gain ballot access. If Publix supports an initiative or candidate, the publicly-traded oligarchy can contribute directly to the campaign without the use of its properties that are open to the public. If the publicly-traded corporation does not support an initiative or candidate, the stores can then potentially deprive the candidate or initiative of ballot access, simply by discriminating against their constitutional right to petition to gain ballot access on Publix publicly-traded property that is open to the public and already allows a multitude of

US Courthouse -

soliciting and fundraising activities.

One might assume that many, if not most corporations, such as Publix, Walmart, Home Depot or Lowes would likely either support or oppose many of the same candidates or initiatives. In such, these behemoth corporations can easily block any candidate or initiative, they deem to pose as a threat to their own corporate agenda or goals, from ballot access, such as an initiative or candidate, such as Scott, who is in support of small businesses.

The 'Publix' case, is about 17 years old. Since then, large corporations have all but demolished their competition. Publix, Walmart, Home Depot and big box stores are undeniably the most accessible and likely gathering places in today's world.

Two-to-three weeks before my false arrest for legally petitioning to gain ballot access at the Walmart, in Clewiston, FL, I was falsely arrested for petitioning on the sidewalk immediately outside

U S Courthouse

the gate to the enterance of the
Gun Show, near the ticket booths-
but not blocking the enterance
or obstructing the flow of traffic-
at the South Florida Fairgrounds in
West Palm Beach, for the same
exercise of my right to petition
which is specifically protected
under Florida's constitution, pursuant
'PruneYard's ruling; due to Florida's
State constitutional provisions being
more expansive than the U.S.
Constitution in protecting the right
to petition, which is 'PruneYard's
measuring stick. 'PruneYard' is not
a California ruling. The U.S. Supreme
Court does not make state rulings. It
makes federal rulings. The U.S. Supreme
Court ruled that states with more expansive
State constitutional provisions covering
free speech and the right to petition
cannot trespass petitioners for exercising
their right to petition on private property
open to the public.
   The Leon County Circuit Court, in 'Publix',
acknowledges 'there are few places left

U.S Courthouse.

for citizens to seek signatures for petitions, to handout literature, or to generally engage in political speech.' This court also agrees that many laws in Florida, specifically authorized the submission of petitions for various political purposes, and that the Florida and U.S. Constitutions fully protect such activities and other forms of political speech.

The court in 'Publix' quotes 'Lloyd' stating, "The basic issue in this case is whether respondents, in the exercise of asserted free speech rights, may distribute handbills on Lloyd's private property contrary to its wishes and contrary to policy enforced against all handbilling. In addressing the issue, it must be remembered that the ~~BLANK~~ [1st] and ~~BLANK~~ [14th] ~~BLANK~~ [AMENDMENTS] safeguard the rights of free speech and assembly by limitation on State action, not on action by the owner of private property used non-discriminatorily

[2] The case law supplied to me had quoted case law removed, hence the 'blanks'.

U S Courthouse -

for private purposes only...' The
aforementioned quoted case law, in and
of itself, excludes 'Lloyd' from being
used by the State, in 'Publix', since
Publix admits to discriminating
against those exercising free speech
and their right to petition while
specifically picking and choosing only
solicitors it wants on its property.
Therefore 'Publix' is not like 'Lloyd'
because it is not non-discriminatory
which is the basis for the court's
usage of 'Lloyd' in the 'Publix' case.
   Further, the Leon Circuit Court
erroneously touts that '(i)t is well-
established that there is no right
under the ~~First Amendment~~ [2] for a person
to engage in free speech or other
political activity on private property
without the owner's permission' when
the opposite is true no matter what
fills in the blank box since the ruling
allowing free speech and the right to
petition specifically stems from the
U.S. Supreme Court's 'PruneYard'
ruling based on expansive state

U S Courthouse -

constitutional provisions covering free
speech, the right to assemble and the
right to petition. It is also worth
repeating that Scott's arrest at
Walmart was not on private property
but rather on property owned by a
publicly-traded company, which means
that any such comparison between
Scott's Walmart case and that of 'Publix' is
unfounded. That being said, Scott's
Palm Beach County arrest for petition
at a Gun Show, at the South Florida
Fairgrounds in West Palm Beach was
on privately owned property that was
open to the public.

Justice Marshall concurs in 'PruneYard'
stating, in part, that 'the California Supreme
Court's decision in the case at bar
represented part of a healthy trend of
affording state constitutional provisions
a more expansive interpretation than
was being given to the Federal Constitution,
and the California Supreme Court's
decision was not violative of due
process, even though it placed a
limitation on the common law of trespass.'

U.S. Courthouse-

While federal law may not limit 'free
speech and other political activity on
private property without the owner's
permission', Marshall is clear in his
ascertion that 'state constitutional
provisions' 'with a more expansive
interpretation' such as Florida's
Constitution which protects free speech,
the right to assemble and the right to
petition, in 'PruneYard' does, in fact,
place 'a limitation on the common law of
trespass' on private property that is open
to the public. In such, the Palm Beach
County deputies did not have the authority
to arrest Scott for trespass at the
South Florida Fairgrounds.
    The Leon Circuit Court states that
'(t)he United States Supreme Court has
held that notwithstanding the court's
ruling in Lloyd, a state may provide
greater protection under its state
constitution for free expression on
private property so long as such
protection does not conflict with any
federally protected right of the owners.
See 'PruneYard'² Thus, the court must

na. 3,7 and 58

U.S. Court House

also determine the scope of Florida's Constitution's protection of free speech. The Freedom of Speech in Florida's constitution under section 4 of Article 1 - Declaration of Rights reads, "No law shall be passed to restrain or abridge the liberty of speech..." Section 5's Right to Assemble reads, "The people shall have the right peaceably to assemble, to instruct their representatives, and to petition for redress of grievances." It ensures the U.S. Constitutionally protected right to ballot access by protecting a Florida citizen's right to free speech, right to assemble and right to petition.

   In denying the right to petition, for many citizens, the constitutionally protected federal right to ballot access would also be denied, which is a violation of the Fourteenth Amendment. Any American citizen can run for office. Not every citizen can afford the fee. The U.S. Supreme Court has ruled that there must be an alternative to paying the fee or an indigent candidate must be

U S Courthouse-

placed on the ballot (Panish v. Lubin).
The purpose of candidate petitioning
is to ensure each citizen's right to
ballot access. The concept is based
on the fact that each citizen is
equal and cannot be discriminated
against based on economic standing.
By denying a citizen's right to petition
on quasi-public property or property
that is open to the public, a significant
portion of the United States citizenry
would lose their constitutionally
protected right to ballot access and,
in such, their standing as equals,
such a violation cannot be done.
It is utterly unconstitutional and
Anti-American.
With the advent of technology,
further complications arise when
tech firms block candidates from
raising campaign donations online.
Such vicious and illegal attacks from
both U.S. and foreign websites and
platforms can absolutely block and
deprive a candidate from collecting
the necessary funds to pay the fee

U.S. Courthouse -

and access the ballot, which makes
the protection of the right to petition
to guarentee the right to ballot
access absolutely essential. There is
no doubt that in today's world people
gather at private property that is
open to the public and/or quasi-public
property. In such, denying a candidate
the right to petition at these locations
would essentially deny their constitutional
right to ballot access.

   The Leon County Circuit Court, in 'Publix',
in accurately claims that there is 'no
evidence of government control property
(that) there is no State action in this
case.' A large portion of privately-owned
property that is open to the public and
quasi-public property, in the State of
Florida, has a signed agreement with
local law enforcement allowing their
officers onto the property to warn or
arrest trespassers and others. Many,
if not most quasi-public properties
in Florida, have a contractual agreement
with local law enforcement allowing local
officers to surveil camera feeds.

U S Courthouse-

Both examples establish a certain
level of 'government control over
such property' illustrating 'State
action' and negating the Leon County
Circuit Court's claim otherwise.
What these contracts between
the state government and these
quasi-public property owners establish
is an obligation on the part of the
property owners, based on their
contract(s) with a Florida government
entity relating to the aforementioned
services and any other services
contracted, is that the property
owner is obligated to adhere to
Florida Statute 876.05, 112.313 and
768.28, which means these property
owners of privately-owned property
open to the public have a duty to
uphold the U.S. and Florida Constitutions
and that if they do not, they can be held
ethically and legally liable. Due to
their contractual relationship with a
Florida government entity, these quasi-
public property owners must act within
the law, not in bad faith or with malice

or in a bias manner and must not deprive citizens of their rights.

For the reasons stated above, it seems probable the Leon County Circuit Court was unaware of the aforementioned contracts or that over time such contracts have become a newer development in the relationship between businesses and government. It is easy to conclude that a law enforcement agency that has a contractual agreement with a quasi-public property may be presented with a conflict of interest if asked by a quasi-public property owner to remove a petitioner from the property even if the officer is aware of 'Pruneyard' and 'Wood', since the law enforcement agency potentially has a source of revenue threatened if it does not comply with the property owner's request to have the petitioner removed from the premises, effectively leaving candidates petitioning for ballot access without a reasonable place to petition.

Scott has often found that

US Courthouse-

law enforcement officers suggest,
as they are writing a trespass
warning against her with the
threat of her arrest if she returns
(generally) before the qualifying
period has ended, she petition
on the street sidewalk, a place
where people do not gather
and so infrequently pass by that it
is unlikely a petitioner could gather
enough signatures in an entire year
if standing on the sidewalk for
eight hours a day attempting to do
so. The suggest is not a reasonable
or realistic solution.
    The Leon County Circuit Court, in
'Publix', again misconstrues 'Lloyd' in
asserting that 'Publix has no obligation
to allow persons to come onto or remain on
its property to engage in free speech
activity (one assumes the court has lumped
the right to petition in with 'free speech
activity' when, in fact, the right to petition
falls under the right to assemble, in
Florida's Constitution, as discussed above.
That being said, Florida's Constitution,

U S Courthouse-

Art. 1, Sec. 4, Free Speech specifically reads in relevant part that "(n)o law shall be passed to restrain or abridge the liberty of speech..."

'PruneYard' clearly and persuasively iterates, "The reasoning in Lloyd Corp. v. Tanner, 407 U.S. 551 - which held that the First Amendment does not prevent a private shopping center owner from prohibiting the distribution on center premises of handbills unrelated to the center's operations -- does not expropio vigore limit a State's authority to exercise its police power or its sovereign right to adopt in its own constitution individual liberties more expansive than those conferred by the Federal Constitution. And a State, in the exercise of its police power, may adopt reasonable restrictions on private property so long as the restrictions do not amount to a taking without just compensation or contravene any other federal constitutional provision."

'PruneYard' states, "Not every destruction or injury to property by governmental

U.S. Courthouse-

actions constitutes a 'taking' in the constitutional sense, but rather the determination where a state law unlawfully infringes a landowner's property in violation of the Fifth Amendment's prohibition against the taking of property without just compensation requires an examination of whether the restriction on private property forces some people alone to bear public burdens which, in all fairness and justice, should be bourne by the public as a whole, since the Fifth Amendment prevents the public from loading upon one individual more than his just share of the burdens of government and says that when he surrenders to the public something more and different from that which is exacted from other members of the public, a full and just equivalent shall be returned to him; this examination entails an inquiry into such factors as the character of the governmental action, its economic impact, and its interference with reasonable investment

(Handwritten)

U S Courthouse-

backed expectations, so that when
regulation goes too far, it will be
recognized as a taking."
     For the several reasons listed above,
it is clear that 'Publix' is faulty in
nearly every argument it makes. So,
while it appears on the surface to
have 'researched the issue regarding
a private citizen's right to petition on
private property', the Leon court
failed miserably in its attempt to do
so. While the Leon court, in the
2005 'Publix' case, 'could find no
cases that prevent a private business
from excluding petitions', both the
U.S. Supreme Court's 1980 'PruneYard'
ruling and Florida's 2003 'Wood' case
evidence otherwise.
     For the reasons detailed throughout
this petition, Scott was legally
petitioning at Walmart on Nov. 9,
2021 and two-to three weeks before
that at a Gun Show, held at the South
Florida Fairgrounds. The arrests
were false arrests since Scott was
authorized by the U.S. Supreme

Court, via 'Pruneyard' and the Florida Constitution's, Sec. 4 and 5 of Art. 1; and 'Wood' to petition on quasi-public property and private property that is open to the public, and since 'Pruneyard' and 'Wood' limit Walmart and the South Florid Fairgrounds authority to trespass petitioners.

In such, Scott has shown probable cause that she was unlawfully detained, without authority and her Federally-protected right to petition was violated based on Florida's more expansive state constitutional provisions and Scott's right to ballot access based on Federally-protected 1st and 14th Amendment rights ('Lubin') regarding Scott's request for declaratory and injunctive relief, she has established that a genuine threat of prosecution exist [see Steffel v. Thompson, 415 U.S. 452 (1974); Doran v. Salem Inn, Inc., 422 U.S. 922, 930-931 (1975)]

US Courthouse-

entitling Scott to resort to a federal
forum to seek redress for the deprivation
of Scott's rights (42 U.S.C. § 1983).
  Scott has justified declaratory and
injunctive relief by the exceptional
circumstances and a clear showing
that an injunction is necessary in
order to afford adequate protection of
constitutional rights [Spielman Motor
Co. v. Dodge, 295 U.S. 89, 95 (1935).
  The threat of repeated prosecutions in
the future and the effect of such a
continuing threat on Scott's ability
to petition to gain ballot access
during the 2022 election cycle are
sufficient to justify injunctive relief.
[Douglas v. City of Jeanette, 319
U.S. 157 (1943)].
  For the reasons above, the
Federal Court is not limited to
granting declaratory relief [see Wooley
v. Maynard, 430 U.S. 705, 711-712
(1977)].
  During the 2020 election cycle,
Scott was cited with a trespass
warning 27 times on 25 days,

U.S Courthouse-

which in and of itself was enough to keep Scott from gaining ballot access for the federal seat of U.S. House of Representatives, in District 22.

Thus far, during the 2022 election cycle Scott has been cited for trespass for petition on quasi- public property and private property open to the public on 3 separate occassions, arrested twice and so far has spent approximately 55 days in jail for legally petitioning at locations protected by 'Wood' and 'Pruneyard'. One of the locations that trespassed Scott was a large shopping complex with an open-air free, open to the public outdoor arena in the middle of the center where live music was playing, about 50+ people were dancing and another 100 or so people were watching the show at the same time on the other side of the complex was a political rally where two U.S. House

U.S. Courthouse - . . .

Representatives were speaking.

NO PROBABLE CAUSE OF TRESPASS

It is unclear which specific trespass charge Scott is being charged with. The Booking Charge was Fla. Stat. 810.09(2b): Trespassing Fail to Leave Property Upon Order By Owner, First Degree Misdemeanor. The First Appearance Charge is 810.09.26: Trespass. The Clerk's Docket reads that the charge is 810.09, which is a group of all outdoor trespass charges. When Scott asked for clarification against her, during her arraignment (for which her court appointed attorney failed to appear), the judge informed Scott that the charge was 810.09(1), which is not an actual charge but which was later sent to Scott as the SAO Disposition Charge 810.09(1) Trespass other than a Structure / Conv. - Notice by Actual Communication First Degree Misdemeanor.

J S Courthouse

Assuming Fla. Stat. 810.09(1) is the formal charge against Scott, it is necessary to note that it is not an actual charge. Fla. Stat. 810.09(1)(a)1 is a charge and Fla. Stat. 810.09(1)(a)2 is a charge. Although it is possible the might have meant to charge Scott with 810.09(1)(a)1, that is not what the prosecutor formally filed, nor is it the charge the judge found probable cause on.

In arguendo, let's say Scott had been charged with Fla. Stat. 810.09(1)(a)1, which reads, "A person <u>WITHOUT BEING AUTHORIZED</u> ...willfully... remains in any property other than a structure..."(emphasis added). Yet, as confirmed by Justice Marshall, 'PruneYard'... <u>placed a limitation on the common law of trespass.</u>' (emphasis added)

In such, Scott was AUTHORIZED to petition at Walmart, meaning that neither Walmart employees nor the Clewiston Police had the authority to trespass her. Further, 'Wood' and Florida's Constitution AUTHORIZED Scott's right to petition to gain ballot access while removing such

U.S. Courthouse-

authority from the owner of quasi-
public property or law enforcement.
The right of a property owner of
quasi-public land that is open to the public
and that of law enforcement does not
supersede the prohibition of trespassing
a petitioner set by the U.S. Supreme
Court in 'PruneYard' on Florida's 'Wood'.
In such, there was no authority to trespass
Scott which means the charge against
her is without lawful authority and there
is no evidence of probable cause of trespass.
Scott is entitled to immediate release. Her
petition for writ of habeas corpus should
be granted. Her request for declaratory and
injunctive relief to prohibit further
arrests should be granted.

## ELEMENTS OF TRESPASS NOT MET

Pursuant to West's F.S.A. Std. Crim.
Jury Instr. 13.3, 'To prove the crime of
Trespass on Property other than a Structure
or Conveyance, the State must prove (all)
four elements beyond a reasonable doubt.'
The fourth element is that the
'Defendant's remaining in the property

(Handwritten
Copy

U.S. Courthouse

was without permission, express or implied, of Walmart or any other person authorized to give that permission.' No one had the authorization to deny Scott permission to petition on Walmart's quasi-public property, for the reasons addressed throughout this petition stemming from Florida's expansive constitutional provisions relating to free speech, right to petition; the U.S. Supreme Court's ruling in 'PruneYard' limiting the right to trespass as it relates to petitioners; and Florida's 'Wood' which addresses the state's long standing public policy allowing the right to petition on quasi-public property and dismissing the trespass charge against Wood, who had been arrested for petitioning on quasi-public land. In such, the fourth element of trespass cannot be met because Scott was legally petitioning at both Walmart and the South Florida Fairgrounds, under the authorization of the Florida Constitution and reconfirmed by the federal 'PruneYard'

US Courthouse.

ruling and the state 'Wood' ruling.
Therefore, no one had the permission
or legal authority to deprive her of
her constitution right to petition,
per Florida's Constitution or her
constitutional right to ballot access
in accordance with the federal
Constitution.

The jury instructions further
state, "Authority to remain in property
need not be given in express words. It
may be implied from the circumstances.
It is lawful to remain in the property of
another if, under all the circumstances,
a reasonable person would believe that
she had the permission of the owner
or occupant."

Scott knows she had the
permission of Walmart and the South
Florida Fairgrounds because refusing
her right to petition there is
automatically voided since it violates
both state and federal law. Property
owners have a duty to know and
obey the law. The above property
owner knowingly and willfully

open their property to the public with the knowledge of existing laws or the ability to learn the prevailing laws. In doing so, quasi-public property owners limit their right to trespass petitioners. If a quasi-public property owner wishes to regain the right to trespass petitioners, it is within their ability to close their doors to the public. What a quasi-public property owner may not do is use their working relationship with local law enforcement to have legally petitioning citizens arrested.

As stated in 'PruneYard', "The shopping center by choice of its owner is not limited to the personal use of (owner) and the views expressed by members of the public in passing out pamphlets or seeking signatures for a petition thus will not likely be identified with those of the owner.

For the reasons stated in the above paragraph based on the facts presented throughout this petition, Scott was

lawfully on the property due to the implied circumstances, which are based on her constitutional right to petition for ballot access on private property that is open to the public and quasi-public land, which can be found in 'PruneYard' and 'Wood', respectively, and supported by Florida's expansive state constitutional provisions located in Article 1, Sections 4 and 5 of the constitution.

In relation to Florida's good faith clause, in West's F.S.A. Std. Crim. Jury Instr., 13.3, Scott, like any reasonable person would have believed she had the permission of owner, its employees and law enforcement, particularly since Scott had explained the relevant case law to the arresting officers BEFORE the arrest.

pg 56 of 58



pg. 57 of 58

WHEREFORE, Scott requests that this court order declaratory and injunctive relief preventing further arrest or prosecution for petitioning to gain ballot access on private property open to the public and quasi-public land, in the State of Florida.

March 10, 2022

Christine Scott
212 E. Hillsboro Blvd #212
Deerfield Beach, FL
33441
(561) 587-0822
friendsOfChristineScott@outlook.com

Service List:
Ashley Moody, Attorney General
Office of the Attorney General, State of Florida
PL-01 The Capitol, Tallahassee, FL 32399

pg. 58 of 58